IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**LAQUAN EUGENE JOHNSON,**
        **Petitioner,**

**v.**
                                      **Criminal Action No.: 3:14-CR-39**
                                      **Civil Action No.: 3:17-CV-51**
                                      **(GROH)**

**UNITED STATES OF AMERICA,**
        **Respondent.**

## <u>REPORT AND RECOMMENDATION</u>

## I.    <u>INTRODUCTION</u>

On May 1, 2017, the *pro se* Petitioner filed a Motion to Vacate under 28 U.S.C. § 2255. Petitioner is a federal inmate housed at Hazelton FCI in Bruceton Mills, West Virginia, who is challenging the validity of his sentence, specifically his designation as a career offender and the resulting enhancement to his sentence. This matter is pending before this Court for an initial review and Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule of Prisoner Litigation Procedure 2.

## II. FACTUAL AND PROCEDURAL HISTORY

On July 22, 2014, Petitioner was indicted and charged with four controlled substance offenses. ECF No. 1. On April 7, 2015, a superseding indictment[1] charged Petitioner with six controlled substance offenses. ECF No. 53.

On October 27, 2015, pursuant to a written plea agreement, Petitioner entered a

---

[1] The superseding indictment charged Petitioner with: Drug Conspiracy in Count 1; Aiding and Abetting the Distribution of Cocaine Base in Count 2; Aiding and Abetting the Distribution of Heroin in Count 3; Distribution of Heroin in Count 4; Distribution of Heroin and Fentanyl [causing] Death and Serious Bodily Injury in Count 5; and Distribution of Heroin and Fentanyl in Count 6. ECF No. 53.

plea of guilty to distribution of heroin as charged in Count 4 of the superseding indictment, which offense was alleged to have occurred on April 17, 2014. ECF No. 149.   Pursuant to the terms of the plea agreement, the United States agreed to recommend that the remaining counts of the indictment be dismissed if Petitioner was forthright and truthful. ECF No. 207 at 2, ¶ 6.   Additionally, Petitioner agreed to be bound to the plea terms without the right to withdraw his plea, provided that the Court imposed a sentence between 120 and 210 months.   Id. at ¶ 3.   According to the Presentence Investigation Report, Petitioner was a career offender within the meaning of United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") § 4B1.1 for the following reasons: (1) Petitioner was 18 years or older at the time of the commission of the instant offense; (2) the instant offense was a felony involving a controlled substance; and (3) Petitioner had at least two prior felony convictions for a controlled substance offense.   ECF No. 210 at 18 – 23.

On July 25, 2016, Petitioner was sentenced to imprisonment for 210 months to be served concurrently with any sentence imposed in Berkeley County, West Virginia Circuit Court, in case number 15-F-137.   ECF No. 211 at 2.    On that date, the original indictment and Counts 1, 2, 3, 5 and 6 of the superseding indictment were dismissed.   Id. at 1.

Petitioner did not appeal his conviction.   On May 1, 2017, Petitioner filed the instant motion to vacate his conviction under 28 U.S.C. § 2255.   ECF No. 247.   On May 1, 2017, Petitioner also filed a 23-page motion[2] styled "Johnson Moves Under Section 2255, of Title 28 United States Code".   ECF No. 248.   The motion asserts that the decision in Mathis v. United States, __ U.S. __, 136 S.Ct. 2243 (2016), supports his claim that he was denied effective assistance of counsel.   Id.

_____

[2] The motion requested as relief that Petitioner be appointed counsel and that his conviction be vacated.  This Court entered an order denying the motion for counsel on August 30, 2017.  ECF No. 263.

A notice of deficient pleading issued on May 1, 2017, advising Petitioner that pursuant to Local Rule of Prisoner Litigation Procedure 3.4, his motion needed to be on the correct form, a copy of which was enclosed.  ECF No. 251.  On May 3, 2017, a duplicate copy [ECF No. 253] of Petitioner's original motion to vacate [ECF No. 247] was filed with the Clerk.

On May 18, 2017, Petitioner refiled his motion to vacate on the court-approved form. ECF No. 257.  Therein he asserts three claims for relief, all of which are framed as matters of ineffective assistance of counsel: (1) that his counsel was ineffective when he "did nothing to correct" Johnson's sentence enhancement based on his designation as a career offender [ECF 257 at 5]; (2) that his counsel was ineffective for failing to seek a writ of coram nobis in Maryland to eradicate the conviction or convictions which caused him to be designated a career offender [ECF 257 at 6]; and (3) that his counsel was ineffective for failing to argue that Supreme Court precedent did not permit his designation as a career offender [ECF 257 at 8].  Petitioner requests that the Court: (1) find he was denied effective assistance of counsel: (2) vacate his sentence; and (3) resentence him without designating him as a career offender pursuant to United States Sentencing Guidelines.  ECF No. 257 at 13.

### III. STANDARD OF REVIEW

#### A.    Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the

record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Cases in the U.S. District Courts.

**B.    Pro Se Litigants.**

Courts must read *pro se* allegations in a liberal fashion and hold those *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

**C.    Motions made Pursuant to 28 U.S.C. § 2255.**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding.  To succeed on such a motion, the movant must prove one of the following, that: (1) the conviction or sentence was imposed in violation of the laws or Constitution of the United States; (2) the court in imposing

sentence lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

The Supreme Court of the United States has "long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Petitioners are limited in the issues which may be addressed in cases brought pursuant to § 2255. Petitioners who fail to raise issues on direct appeal or who raise issues on direct appeal which are decided there, are both precluded from addressing those same issues in § 2255 proceedings. "Nonconstitutional claims that **could** have been raised on direct appeal, but were not, may not be asserted in collateral proceedings." Stone v. Powell, 428 U.S. 465, 477, n.10, (1976) (emphasis in original) (citing Sunal v. Large, 332 U.S. 174, 178-79 (1947)); see also United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009) (A petitioner who waives the right to appeal "is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that **could have** been raised on appeal.") (Quoting Brian R. Means Fed. Habeas Practitioner Guide, Jurisdiction ¶ 1.23.0) (2006-2007) (emphasis in original) (internal citations omitted). Similarly, the Supreme Court has long held that the general rule that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003).

A constitutional error that could have been, but was not raised on appeal, may not be raised for the first time in a § 2255 motion, unless it passes a two part-test which requires the movant to show either (1) "cause" that excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain a collateral attack. (citing Bousley, 523 U.S. at 621-22); Frady, 456 U.S. at 167-68.

The Supreme Court has recognized that it has not strictly defined "cause" because of "the broad range of potential reasons for an attorney's failure to comply with a procedural rule, and the virtually limitless array of contexts in which a procedural default can occur." Reed v. Ross, 468 U.S. 1, 13, (1984) (Citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977). The Supreme Court explained that, "[u]nderlying the concept of cause, however, is at least the dual notion that, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel." Id. (Citing Wainwright v. Sykes, supra, at 91, and n. 14; Henry v. Mississippi, 379 U.S. 443, 451 (1965)). To establish "actual prejudice," contemplated in the first prong, the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1977) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

To demonstrate a miscarriage of justice, contemplated in the second prong, the movant must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

And it is also, "well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984); Bousley v. United States, 523 U.S. 614, 621 (1998).

# IV.   ANALYSIS

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review Petitioner's motion and  submit findings and recommendations to the District Court.   As a *pro se* litigant, Petitioner's pleadings are accorded liberal construction and held to less stringent standard than formal pleadings drafted by attorneys. Haines v. Kerner, supra.  However, even under this less stringent standard, Petitioner's motion to vacate should be denied.   Petitioner's motion to vacate fails because he is unable to meet the requirements of 28 U.S.C. § 2255 which requires proof that: (1) his conviction or sentence was imposed in violation of the laws or Constitution of the United States; (2) the court in imposing sentence lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence was otherwise subject to collateral attack.

Petitioner waived his right to appeal or collaterally attack his conviction and sentence on all grounds except for allegations of ineffective assistance of counsel or prosecutorial misconduct.   Petitioner makes three claims that he was denied effective assistance of counsel.

Claims of ineffective assistance of counsel are governed by the two-part analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984), which requires that Petitioner show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   Id. at 694. As discussed more fully below, Petitioner has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness, but even if he had done so, Petitioner has further failed to demonstrate that the result of the proceeding would

7

have been different as a result of such alleged error.

The Supreme Court in Strickland recognized that, "[j]udicial scrutiny of counsel's performance must be highly deferential," and that courts should also "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 689, 690. "[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality."  Id.  "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement."  United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).   Thus, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   Hill v. Lockhart, 474 U.S. 52, 59 (1985).   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

Petitioner has made no showing that his counsel's performance fell below an objective standard of reasonableness in relation to either his plea negotiations and plea entry or when counsel did not pursue a writ of coram nobis regarding Petitioner's prior Maryland felony controlled substance convictions.  Furthermore, even if counsel's actions were deemed to fall below an objective standard of reasonableness, Petitioner is unable to demonstrate that the result would have been different. Accordingly, Petitioner's allegation of ineffective assistance of counsel is without merit.

**A.    Petitioner's sentence was not imposed in violation of the laws or Constitution of the United States.**

Following his guilty plea to distribution of heroin, Petitioner was sentenced to 210 months of imprisonment on July 25, 2016.  ECF No. 211.  The sentence imposed was within the 120 month to 210 month range agreed upon by the parties in the plea agreement filed with the Court [ECF No. 149], and as authorized by the controlling statute, 21 U.S.C. § 842(b)(1)(C).[3]

According to the Pre-Sentence Investigation Report, Petitioner has four prior convictions for controlled substance violations, all of which convictions were obtained by a guilty plea entered by Petitioner while he was represented by counsel.  ECF No. 210 at 18 - 21.  On September 23, 1997, Petitioner was convicted of possession with intention to manufacture or distribute a controlled substance in Baltimore City Circuit Court, docket number 297013030.   Id. at 18.   Following a probation revocation, Petitioner was

---

[3]  21 U.S.C. § 841(b)(1)(C) provides in its entirety:

In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid (including when scheduled as an approved drug product for purposes of section 3(a)(1)(B) of the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000), or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $2,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 6 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced be eligible for parole during the term of such a sentence.

sentenced to seven years in jail for that conviction.  Id.  Also on September 23, 1997, Petitioner was convicted of a second count of possession with intention to manufacture or distribute a controlled substance in Baltimore City Circuit Court, docket number 197220033.  Id. at 19.  On June 30, 2000, Petitioner was convicted of conspiracy to possess with intent to distribute cocaine in Baltimore City Circuit Court, docket number 100006001.  Id. at 20.  Petitioner was incarcerated for five years following the revocation of his probation.  Id.  On April 12, 2006, Petitioner was convicted of possession of heroin with intent to distribute in Baltimore City Circuit Court, docket number 206076050.  Id. at 21.   These four convictions for controlled substance violations all occurred before Petitioner reached 26 years of age; the first two convictions occurred before Petitioner reached 18 years of age.   Based on those convictions, Petitioner was determined to "meet[ ] the criteria as a Career Offender."  Id. at 17, ¶ 86.

Under the Guidelines, only two of Petitioner's four prior convictions were necessary predicates for him to be designated as a career offender for sentencing enhancement:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2015).  The Guidelines define the term "prior felony conviction" as:

> [A] prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed.  A conviction for an offense committed at age eighteen or older is an adult conviction.  A conviction of an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted.

U.S.S.G. § 4B2.3, Commentary 1.  Petitioner meets the three criteria for designation as a career offender under § 4B1.1(a).

First, Petitioner's date of birth is February 4, 1980.  At the time he committed the instant offense of conviction on April 17, 2014 offense to which he entered his plea, Petitioner was 34 years old.

Second, the instant offense, distribution of heroin, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), is a felony controlled substance offense.

Third, Petitioner has at least two prior felony controlled substance convictions. Petitioner argues that two of his four prior offenses were not controlled substance offenses for purposes of the career offender provisions of the Guidelines, because they involved benzylfentanyl and thenyfentanyl, "which are not criminalized by federal law."  ECF No. 248 at 6.  Petitioner does not allege which of his prior convictions allegedly involved either benzylfentanyl or thenylfentanyl, however, neither of the two offenses committed by Petitioner after he reached the age of 18 involved those substances.  The information on Petitioner's offense from 1996[4] when he was 16 years old does not list the controlled substance he was accused of possessing.  ECF No. 210 at 18, ¶ 92.  Likewise, the information on Petitioner's offense from 1997 when he was 17 years old does not list the controlled substance he was accused of possessing.  Id. at 19, ¶ 93.

However, the offenses for which Petitioner was convicted after turning 18 were conspiracy to possess with intent to distribute cocaine and possession with intent to distribute heroin.  ECF No. 210 at 20 ¶ 94,  21 ¶ 97.  The sentences for these two offenses were for seven years for conspiracy to possess with intent to distribute cocaine

---

[4] On September 23, 1997 Petitioner was convicted as an adult on two sets of felony offenses committed while he was a juvenile: (1) those committed on September 22, 1996 when he was 16 years old; and (2) those committed on August 8, 1997 when he was 17 years old.

and six years for possession with intent to distribute heroin.  All but 292 days of the seven year sentence was initially suspended, but following Petitioner's probation revocation, on January 27, 2007, five years of incarceration was imposed.  Id. at 20 ¶ 94.  Petitioner's six year sentences was imposed in 2006, and was served concurrently to his seven year sentence imposed in 2000.  Id.  at 20 ¶ 94,  21 ¶ 97.  Petitioner was released upon parole for these offenses on May 5, 2009.  Id.  Regardless of whether those two offenses were classified as felonies or not, pursuant to Guidelines Commentary 1 to § 4B1.2, because the term of imprisonment for both of those offenses exceeded one year, both are considered prior felony convictions for purposes of Career Offender designation.  The instant offense occurred on April 17, 2014, less than five years from Petitioner's release on his two prior felony controlled substance sentences.

Those two prior convictions were properly considered as controlled substance offenses pursuant to the provisions of § 4B1.2(b) of the Guidelines which defines the term "controlled substance offense" to mean:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Pursuant to 21 U.S.C. § 1308.11(c)(11), heroin is a Schedule I Controlled Substance[5].

Pursuant to 21 U.S.C. § 1308.12, cocaine is a Schedule II Controlled Substance[6].

---

[5]  Pursuant to 21 U.S.C. § 812, a Schedule I substance has a high potential for abuse, no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of the drug or other substance under medical supervision.

[6]  Pursuant to 21 U.S.C. § 812, a Schedule II substance has a high potential for abuse, has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, and abuse of the drug or other substances may lead to severe psychological or physical

Accordingly, Petitioner's Maryland convictions for conspiracy to possess with intent to distribute cocaine and possession with intent to distribute heroin were properly considered as controlled substance offenses for purposes of career offender designation.

Further, according to the provisions of § 4B1.2(c) of the Guidelines, the term "two prior felony convictions" means:

> (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

Petitioner meets both of the definitional criteria under § 4B1.2 in regard to having committed the instant offense after being convicted of two prior felony controlled substance offenses.  First, Petitioner committed the instant offense on April 17, 2014. Considering only the two offenses for which he was convicted after reaching the age of 18, Petitioner was convicted of one felony controlled substance offense in 2000, and a second felony controlled substance in 2006.  Second, the sentences for the two prior felony convictions, which each exceeded one year, were imposed on separate dates.

Petitioner's reliance upon the United States Supreme Court's decision in <u>Mathis v. United States</u>, __ U.S.__, 136 S.Ct. 2243 (2016) is misplaced.  In <u>Mathis</u>, the Court outlined the process by which a district court should determine for the purpose of the Armed Career Criminal Act ("ACCA"), if a defendant's prior state-court conviction was

---

dependence.

one of the enumerated violent felonies—involving the use or carrying of a weapon or explosives, or is burglary, arson or extortion—listed in 18 U.S.C. § 924(e)(2)(B). 136 S.Ct. 2247-57. In Petitioner's case, it is not necessary to apply a Mathis analysis as to the two prior felony convictions on which his designation as a career offender were based were controlled substance offenses.

Petitioner's first and third claims for relief assert that his counsel took no action to correct his sentence enhancement based on his Career Offender Designation and his counsel was ineffective for failing to argue that Mathis prohibited his designation as a Career Offender. However, Petitioner is unable to meet the two-prong Strickland test to demonstrate that his counsel was ineffective on either ground. As discussed above, Petitioner was properly designated as a Career Offender, and accordingly, his counsel's performance regarding that designation did not fall below an objective standard of reasonableness. Moreover, there was no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Further, counsel properly did not argue that Mathis supported Petitioner's objection to his Career Offender designation. Mathis concerned the determination of whether a prior conviction qualified as a violent felony for purposes of the ACCA. Petitioner's prior convictions were controlled substance offenses for which a Mathis analysis is unnecessary. Again, counsel's failure to argue against Career Offender designation based on Mathis did not fall below an objective standard of reasonableness, because the case does not stand for the proposition that Petitioner was ineligible for such a designation. Moreover, there was no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.

14

**B.     The Court which imposed Petitioner's sentence properly exercised jurisdiction.**

Petitioner was charged with being a principal actor in controlled substance offenses in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841, 846 and 856.  ECF No. 53.  He entered a plea of guilty to Count 4 which charged:

> On or about the 17th day of April, 2014 in Berkeley County, West Virginia, within the Northern District of West Virginia, defendant LAQUAN EUGENE JOHNSON, a/k/a/ "TURTLE," did unlawfully, knowingly, intentionally, and without authority distribute a quantity of heroin, a Schedule I narcotic drug-controlled substance as defined in Title 21, United States Code, Section 812(c), Schedule I(b)(10), to a person known to the Grand Jury in exchange for $160.00 in United States Currency, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

ECF No. 53.   That matter was properly before the District Court for the Northern District of West Virginia.   "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  18 U.S.C. § 3231.   Petitioner is unable to demonstrate that the District Court which imposed his sentence was without jurisdiction to do so, and accordingly, in that regard his claim fails.

**C.     Petitioner's Sentence Did Not Exceed the Maximum Authorized by Law**

The crime to which Petitioner entered a guilty plea was a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).   The penalty in Section 841(b)(1)(C) in its pertinent part provides that when an individual is convicted of a Schedule I or II controlled substance, "such a person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life."  The sentence increases if a person "commits such a violation after a prior conviction for a

felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment."   21 U.S.C. § 841(b)(1)(C).

Petitioner was sentenced to 210 months, or 17.5 years of imprisonment, within the range agreed upon by the parties in the plea agreement.  ECF No. 211 at 2.  Pursuant to the statute, absent such an agreement, Petitioner would, at a minimum, have faced up to 30 years of imprisonment. However, because Petitioner's sentence did not exceed the maximum authorized by law, he is not entitled to relief pursuant to his motion to vacate under 28 U.S.C. § 2255 on this ground.

**D.      Petitioner's Sentence Was Not Otherwise Subject to Collateral Attack.**

Petitioner's sentence was not otherwise subject to collateral attack because: (1) he waived his right to collaterally attack his conviction and sentence; and (2) his counsel was not ineffective.

**1.      Waiver of Collateral Attack Rights**

In paragraph 11 of the plea agreement, Petitioner agreed to waive his right:

> a.  to appeal any order, the conviction and the sentence or the manner in which that sentence was determined on any ground whatsoever, including those grounds set forth in 18 U.S.C. § 3742.
> b. to challenge the conviction or the sentence or the manner in which it was determined in any post-conviction proceeding, including any proceeding under Title 28, United States Code, Section 2255.

ECF No. 207, at 4, ¶ 11.  Paragraph 11 of the plea agreement further provided that:

> Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.

16

> The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.

Id.  Such a waiver of rights has been upheld as enforceable.

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) (quoting United States v. Wessells, 936 F.2d 165, 167 (4th Cir. 1991)), the Fourth Circuit held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" The Fourth Circuit further wrote that whether a waiver is knowing and intelligent, "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused."  Id. quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992).  However, the Fourth Circuit found that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review on certain limited grounds.  Id. at 732.  The Court recognized that a defendant, "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race."  Id. quoting U.S. v. Marin, 961 F.2d 493 (4th Cir. 1992).  Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations."  Id.

The Fourth Circuit has also held there is, "no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights."  United States v. Lemaster,

403 F.3d 216, n. 2 (4th Cir. 2012).  Therefore, a waiver of the right to collaterally attack a sentence is valid as long as the waiver is knowing and voluntary.  Id.  When reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, a court must first determine whether there is valid waiver which:

> [D]epends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy—specifically, whether the district court questioned the defendant about the appeal waiver—the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).[7]  Thus, if a reviewing court finds that the waiver of rights was valid, any collateral attack including an ineffective assistance of counsel claim related to the plea agreement, is barred by the waiver, provided that a plaintiff may still pursue a collateral attack or appeal related to imposition of an illegal sentence or plea proceedings conducted in violation of the Constitution.

Petitioner's plea entry and sentencing were conducted at the same hearing on July 25, 2016 before the Chief District Judge.  ECF No. 269.  At the hearing, the Court summarized the status of the case and inquired about Petitioner's satisfaction with the proceedings:

THE COURT:  All right.  We, way back when, were here

---

[7] The unpublished decision United States v. Morris, No. 07-4223, slip op. (4th Cir. Sept. 13, 2007) suggests that when a court conducted a thorough Rule 11 colloquy and the defendant specifically mentioned he waived the right to appeal any sentence below the statutory maximum, the record thereby established that defendant made a knowing and voluntary waiver of rights.

before the Court for sentencing, and it became apparent to the Court that perhaps the defendant did not understand that he had entered into a binding plea to a binding sentence.  The Court gave Mr. Johnson the opportunity to withdraw his plea.  We got him new counsel.  Case got off track.  But with new counsel it appears as though it has been on track and running full steam ahead without any concerns or controversies on the defendant's end, or any confusion between the defendant and counsel.  Is that correct, Mr. Johnson?

  THE DEFENDANT:  Yes, Your Honor.

  THE COURT:  So, are you satisfied with [your counsel's] representation?

  THE DEFENDANT:  Yes, Your Honor.

  THE COURT:  You think he's explained everything to you so you now understand what your charges are, what you're facing, and what the terms or requirements of this plea agreement are?

  THE DEFENDANT:  Yes, Your Honor.

Id. at 3:23 – 4:17.  Petitioner's counsel then advised the Court regarding how the parties came to be before the Court:

  [DEFENSE COUNSEL]:  Mr. Johnson is—understands that given the binding nature of the plea agreement, that he's going to be serving some federal time.  He's anxious to go ahead and get that started.  And he's actually the one who initiated the idea.  In other words, it wasn't something I had suggested to Mr. Johnson.  He had asked me during our—one of our conversations if that might be a possibility, and I floated it to the [Assistant United States Attorney].  So we not only are willing to do it that way, we would prefer to do it that way.

  THE COURT:  And I believe that's what he thought he had in the original plea agreement?

  [DEFENSE COUNSEL]:  Yes, Your Honor.

  THE COURT:  Okay.  Did you understand everything that was said between this conversation I just had with your attorney, Mr. Johnson?

  THE DEFENDANT:  Yes, Your Honor.

  THE COURT:  You agree with all of that?

  THE DEFENDANT:  Yes, Your Honor.

. . . .

  THE COURT:  And that's what you want to do?

  THE DEFENDANT:  Yes, Your Honor.

ECF No. 269 at 5:9 – 6:11.  The Court then asked Petitioner and his counsel about his level of education, health and competence before finding he was competent and capable

to enter an informed plea.  Id. at 7: 16 – 8:14.  The Court then further inquired about

Petitioner's satisfaction with his counsel:

> THE COURT:  Mr. Johnson, do you believe you have had adequate time to discuss your case fully with [your counsel]?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT:  Has [your counsel] been able to answer your questions about how best to proceed in this case?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT:  Are you completely satisfied with the legal advice you received from your attorney?
> THE DEFENDANT:  Yes, Your Honor.

Id. at 8:15 – 23.   The Assistant United States Attorney then summarized the terms of the

written plea agreement on the record, including Petitioner's waiver of rights.  Id. 10:10 –

15:19.  The Court conducted a colloquy with Petitioner regarding his waiver of various

rights under the plea agreement, including his waiver of appellate rights:

> THE COURT:  Okay, we're going to go over your appellate rights now.  Do you understand that in your plea agreement, you have agreed to give up your right to appeal your sentence under many circumstances?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT:  Everyone found guilty of a crime in federal court in this district has the right to appeal the conviction and sentence to the Fourth Circuit Court of Appeals in Richmond where a three Judge panel reviews the conviction and sentence to see if it was done correctly.  Do you understand that under the terms of Paragraph 11A of the plea agreement, you are giving up, or waiving, the right to appeal any order, the conviction and the sentence, or the manner in which that sentence was determined on any ground whatsoever, including those grounds set forth in 18 U.S.C. § 3742?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT:  Do you understand you only have the right to appeal your guilty plea if you believe it was unlawful or involuntary, or that there was some other fundamental defect in the proceedings that was not waived in your plea agreement?
> THE DEFENDANT:  Yes, Your Honor.
> THE COURT:  However, you agree that your guilty plea today is lawful and voluntary, and there's been no fundamental defect in the proceedings that you are aware of?  Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand everyone has the right to challenge the conviction or sentence or the manner in which it was determined in a post-conviction proceeding, sometimes called a habeas corpus petition or collateral attack under Title 28 United States Code § 2255?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand under the terms of Paragraph 11B of the plea agreement, you have waived your right to challenge the conviction of the sentence or the manner in which it was determined, and any post-conviction proceedings, including any proceeding under Title 28 United States Code § 2255?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand you only legal remedies on appeal or collateral attack are for claims of ineffective assistance of counsel or for prosecutorial misconduct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  However, you agree there's currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you discussed the waiver of these important appellate rights with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Having done so, do you still wish to waive all these rights?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  [Defense counsel], do you believe the defendant fully understands the importance of the rights he's waiving?

[DEFENSE COUNSEL]:  Yes, Your Honor.

Id. at 33:19 – 36:4.  The Court concluded that discussion saying, "Mr. Johnson, I find you understand the constitutional and other legal rights you're giving up by pleading guilty."  Id. at 39:4 – 6.  After further inquiry regarding Petitioner's decision to enter his plea, the Court found Petitioner's plea to be voluntary.  Id. at 39:12 – 40:4; 40:22 – 23.  Because Petitioner voluntarily and knowingly waived his right to collaterally attack his conviction, his motion to vacate should be denied based on that waiver.

## 2.      Counsel Effectively Assisted Petitioner

Despite waiving his rights to collaterally attack his conviction, Petitioner may challenge his conviction on the grounds of ineffective assistance of counsel.  Following his conviction and sentence Petitioner claims he became aware that his counsel was ineffective through certain acts or omissions.  ECF No. 248.  Petitioner's first and third claims that his counsel was ineffective because counsel did not "correct" Petitioner's designation as a Career Offender, or argue that Supreme Court opinion in <u>Mathis</u> prohibited his designation as a Career Offender, are addressed in section IV.A. herein. Petitioner's second claim is that he was denied effective assistance of counsel because his counsel did not pursue a writ of coram nobis to eliminate some or all of his prior convictions.

"The writ of coram nobis was available at common law to correct errors of fact.  It was allowed without limitation of time for facts that affect the 'validity and regularity' of the judgment, and was used in both civil and criminal cases.  <u>United States v. Morgan</u>, 346 U.S. 502, 507 (1954) (footnotes omitted).  "[A] writ of *coram nobis,* . . . was traditionally available only to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict."  <u>Carlisle v. United States</u>, 517 U.S. 416, 429 (1996).

In his motion and accompanying memorandum of law [ECF No. 248], Petitioner asserts that effective counsel would have discovered legal errors[8] which would have

---

[8]   The Court notes that Petitioner does not allege that he was factually innocent of the Maryland charges.  According to the PSI, when Petitioner was arrested for fourth Maryland controlled substance conviction, he had 20 vials of heroin on his person and 50 other vials of heroin in the car with him.  Nor does Petitioner allege that he was factually innocent of the instant charges.  During the colloquy with the Court, Petitioner stated, "I never looked at this situation as me trying to go to trial.  I never once wanted to go to trial. I never thought about going to trial."  ECF No. 269 at 25:24 – 26:2.

invalidated his Maryland convictions.   Those purported legal errors include that: (1) Maryland criminalizes certain drugs which are not criminalized under federal law; (2) the term "distribution" has a different definition under Maryland law than under federal law; and (3) the drug type and weight are not elements of Maryland offenses.   Without considering the substance of Petitioner's legal arguments, all of those arguments concern legal issues, and thus would not be properly addressed by a writ of coram nobis.  A writ of coram nobis is intended to correct factual errors, however, Petitioner does not allege that any such factual errors existed in regard to his Maryland convictions.  Instead, he asserts legal arguments which are not proper subjects of such a writ of coram nobis.  Accordingly, this Court finds that Petitioner's argument that counsel should have pursued a writ of coram nobis to be without merit, and that counsel's performance and decision not to pursue such a writ did not fall below an objective standard of reasonableness.  Moreover, even if counsel had pursued such a remedy, there was no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.    Accordingly, because Petitioner cannot meet the two part test articulated in Strickland, this Court finds that he is unable to demonstrate he was denied effective assistance of counsel and his motion to vacate should be denied.

## V.  RECOMMENDATION

Based on the foregoing, this Court recommends that the Petitioner's § 2255 motions to vacate [ECF Nos. 247, 257 in 3:14-CR-39; ECF No. 1 in 3:17-CV-51] be **DENIED.**

It is further RECOMMENDED that 3:14-CR-39 and 3:17-CV-51 be **DISMISSED WITH PREJUDICE** and retired from the docket of this Court.

Within fourteen (14) days after being served with a copy of this Recommendation,

any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.   28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985);  <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the District Court.  The Clerk is directed to terminate the Magistrate Judge association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

DATED:      April 6, 2018

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE

24